UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

VYGON CORPORATION,                             :
                                                    11 CIV 9283 (GBD)

       Plaintiff,                              :

       vs.                                          :

DOLPH SEMENZA and IVERA           :   **AFFIDAVIT OF**
MEDICAL CORPORATION,                    **ROBERT A. COMBS**
                                             :

       Defendants.
------------------------------------------------------X

COUNTY OF MONTGOMERY )
                                    ) ss.:
STATE OF PENNSYLVANIA )

    ROBERT A. COMBS, being duly sworn, deposes and says as follows:

    1. I am President and Chief Executive officer of plaintiff Vygon Corporation ("Vygon").

    2. I make this affidavit to provide the Court with additional factual information related to incorrect information presented and inaccurate and misleading representations made at the January 3, 2012 hearing before the Court on Vygon's application for a preliminary injunction against defendants.

    3. Principally on the basis of a Declaration of defendant Dolph Semenza dated December 30, 2011, defendants argued that Vygon was not entitled to a preliminary injunction because, among other reasons:

    (1) Semenza "was never aware of any Vygon "Swab Cap" product, nor [ever was] aware of any development by Vygon of a "Swab Cap" or any other product that could be considered competitive with the Curos®" product defendant Ivera sells. (¶25)

(2) "[N]one of the Vygon products that I dealt with as Manager of Business Development were competitive with the Curos®." (¶33).

(3) "In this new role [Manager of Business Development, Semenza] no longer performed any direct sales of Vygon products to hospitals or other medical facilities." Mem. at 3, citing Semenza Decl. at Para 19.

As shown below, these statements are demonstrably false, misleading and incorrect.

4. Additionally, the Court expressed concerns (1) about whether certain accounts could be identified by Vygon which it was known to Mr. Semenza before he left the company were Vygon's accounts (and as such subject to his agreement not to compete); (2) the extent to which these accounts were actual customers of Vygon prior to Mr. Semenza's departure; and (3) whether Vygon was in the market with a product competitive with defendant Ivera's Couros (R) cap prior to Mr. Semenza's departure. I address these points as well.

**Mr. Semenza's E-Mails Tell a Different Tale.**

5. Following the January 3 hearing, I caused a review to be conducted of e-mail communications Mr. Semenza had with regard to the SwabCap product. As more fully set out below, these e-mails, many written by Mr. Semenza himself, give the lie to the carefully worded assertions made to the Court before and at the January 3 hearing. Copies of certain of these e-mails, with redactions to remove competitively sensitive information, are annexed as Exhibit A to my affidavit.

6. The e-mails demonstrate:

\*that Mr. Semenza acknowledged that products with SwabCap components that Vygon was developing with Excelsior for sale and then selling during his employment as Manager of Business Development at Vygon were competitive with the Ivera Curos® product;

- 2 -

*that Mr. Semenza played a leading role as Vygon's Business Development Manager in negotiating pricing for the SwabCap products from the original equipment manufacturer Excelsior;

*that Mr. Semenza played an active role as Vygon's Business Development Manager in developing marketing materials for the SwabCap products sold by Vygon, in helping to draft training materials regarding SwabCap products for the Vygon sales staff, and in trying to come up with a name for one product with a SwabCap component; moreover, he also played a direct role in attempting to sell Vygon SwabCap products to a New York City hospital;

*that Mr. Semenza took questions from and filtered information to the Vygon field sales staff around the country about the SwabCap products; and

*that Mr. Semenza played a critical role in deciding Vygon's pricing of the SwabCap products for its customers.

**Mr. Semenza Was Closely Involved with SwabCap Products at Vygon in 2011.**

7. Initially, I want to emphasize that Mr. Semenza was intimately involved with the efforts Vygon was making in 2011 to develop and promote the SwabCap product, whether as a device sold within the VyFlush kit or otherwise. The e-mails document an involvement as early as May, 2011 that continued literally up until the day before he tendered his resignation on September 30, 2011.

8. For example, on August 11, 2011 – just six weeks before he gave notice he was quitting Vygon – Mr. Semenza wrote an e-mail to me, to Ron Metro, Vygon's executive vice president, and Jennifer Fitzgerald, Vygon's Director of Marketing. The e-mail discusses profit margin and pricing for the SwabCap product. Mr. Semenza states: "[An individual at Vygon abroad] was most concerned with the price over cost factor and if Excelsior had any discussions

on lowering the cost as the market settles into **curous and other competitors**." (emphasis supplied)  Although Mr. Semenza's spelling was phonetic, his reference to defendant Ivera's Curos® cap is unmistakable, as is his admission that it and Vygon's SwabCap are competing items.

9. In May, e-mails reflect Mr. Semenza's involvement in reviewing proposals for pricing to Vygon of the SwabCap product and also in developing a name for the kit including the SwabCap device.  Mr. Semenza also was the recipient of an e-mail from Jeannette Smith at excelsior dated May 10, 2011 and attaching the draft agreement related to the launch of the SwabCap product.  Such agreement, dated as of May 31, 2011, contains the territory restrictions setting forth fully the type of Vygon's customers and accounts to which Vygon is authorized to sell Vygon/Excelsior's SwabCap product.  Mr. Semenza also was copied on an e-mail dated June 2, 2011 to which was attached a copy of the final agreement.  Finally, Mr. Semenza also had been copied on an e-mail dated May 16, 2011 and defining expressly the restricted group of Vygon's customers and accounts to which Vygon could sell the SwabCap.

10. In June, Mr. Semenza participated in determining the prices at which Vygon would sell the Swabcap product domestically.

11. In July, Mr. Metro identified Mr. Semenza as one of the individuals at Vygon who would receive questions from sales staff in the field throughout the nation about the Swabcap product.  Indeed, also that month, information obtained <u>from</u> Mr. Semenza was used by Vygon's national sales training manager, John Leaity, to put together a Power Point presentation for internal training of sales staff.  Mr. Semenza was so involved he was asked to review the Power Points for accuracy.

12. In August, in addition to his concession in his August 11 e-mail that Vygon was selling SwabCap products and that they competed directly with Curos® cap products, Mr. Semenza was copied on Executive Vice President Metro's July sales report, which included information about competitors, customer feedback and sales efforts needing further support. Similarly, Mr. Semenza was copied on an e-mail recounting a discussion he and Mr. Metro had had about whether the competing SwabCap and Curos® cap products used threaded or snap-on connections and what impact that might have on marketing the SwabCap – a level of detail which belies the assertion that he was not involved with sales efforts after assuming the Business Development/OEM Manager position. On August 15, Mr. Semenza was asked to comment on a product brochure for VyFlush, which included the SwabCap component. On August 19, 2011, Mr. Semanza narrated his direct involvement in an attempt to make a sale of SwabCap products to a New York City Hospital, Bronx Lebanon, in an e-mail with the subject line "Re: VyFlush and SwabCap Sales Update." This e-mail string demonstrates active sales efforts by Vygon for the SwabCap already were underway prior to Mr. Semenza's resignation effective October 14, 2012.

13. On September 6, 2011 – now just three weeks before his resignation – Mr. Semenza participated in a round of e-mails addressing questions from Vygon's Souththeastern regional sales manager about operational aspects of the SwabCap product. Two days later, he communicated by e-mail with a Vygon official abroad who reported that he had had discussions with Excelsior about the SwabCap product and also with defendant Ivera about the Curous [sic] cap – again demonstrating Mr. Semenza's awareness that the two products were in toe-to-toe competition. Mr. Semenza scheduled a "conference call to discuss Swab cap and potential distribution OUS" with marketing director Fitzgerald and others for September 21, just nine days

before he resigned. Finally, the day before Mr. Semenza announced his departure from Vygon, on September 29, Mr. Metro sent an e-mail advising that although Marketing Director Fitzgerald had left the company, Mr. Semenza "is picking up some of the marketing pieces until we find Jen's replacement."

14. The record Mr. Semenza himself created establishes that his previous statements to the Court did not accurately portray his deep involvement with pricing the purchase, pricing the sale, marketing and selling Vygon's SwabCap product, and that he was keenly aware that it was competitive with Ivera's Curos® product.

15. As Mr. Semenza well knew, Vygon was limited (as per its agreement with Excelsior) to selling the new SwabCap product to a finite group of customers – essentially, current or recent former customers of the Vygon/Excelsior VyFlush product. Throughout the entire United States, there were only 291 such accounts. A copy of a listing of those accounts is annexed as Exhibit B.

16. Additionally, I have reviewed our records regarding the status of these accounts. As of November, 2011 (the period in time closest to Mr. Semenza's departure for which the information readily can be retrieved), Vygon had made sales of the VyFlush product to all 291 such accounts.

17. Mr. Semenza knew the restrictions on the accounts we could sell. Indeed, the Court will note that, with regard to his discussion of Bronx Lebanon Hospital in an August 19, 2011 e-mail, Mr. Semenza knew he would have to ask whether that account was one to which sales could be made.

18. Allowing Mr. Semenza to violate his Confidentiality/Non-Competition/Non-Solicitation Agreement with Vygon will cause irreparable harm to Vygon, which will lose the benefits of all investment in the development of the SwabCap product. Vygon's agreement with

- 7 -

Excelsior gives Excelsior the right to terminate the agreement if Vygon cannot secure sales of the new SwabCap product to a certain number of customers within a certain period of time.

19. In view of the foregoing, I respectfully suggest that the Court should consider anew Vygon's need for a preliminary injunction barring defendant Semenza from breaching his non-compete agreement with Vygon and barring defendant Ivera from benefiting as a result.

[Signature page to the Affidavit of Robert A. Combs follows]

[Signature page to the Affidavit of Robert A. Combs]

_____
ROBERT A. COMBS

Sworn to before me this
19th day of March, 2012.
_____
NY\51445292.1

NOTARIAL SEAL
Yu Jong Ngo
NOTARY PUBLIC
Twp of Upper Merion, Montgomery County
My Commission Expires 11/24/2013

- 8 -